Thank you, your honor, and may it please the court. My name is Brian Wanamaker and I am counsel for Appellant Dimitri Otero in his appeal to denial of Section 255A of this petition. You can either keep your voice up or pull the mic down. Are these things like assigned to the firm and then you get it or was it? I actually requested a case from an attorney in charge of Leptini Pro Bono. As they say in South Philly, you've done good. Thank you, your honor. With the court's permission, I would like to reserve two minutes of my argument time today for rebuttal. That's grand. Because of an improper 16-level criminal violence enhancement to Mr. Otero's base offense level, Mr. Otero has already served far more time than that to which he should have ever been sentenced. After the state prosecutor cast a wide net by charging only recklessness in order to assure a conviction or a plea, it would be fundamentally unfair to now allow the federal government to pretend as though the state prosecutor had pinpointed the crime of violence mischarging. You're going to have to slow down. Give me a little extra time even though you're on the clock. I think this might be worse. That's okay. Join the club. Your words are coming faster than my ears can absorb. We feel the same way, Judge Niagara, but we'll give you some extra time if you need it. It's a complicated case. I don't believe that will be necessary. The question here, obviously, is what information should have been known by or given or reported by the attorney to Mr. Otero at the time of sentencing with respect to the possibility that someone argued there should have been a 16-level enhancement or an 8-level enhancement? Maybe you could run us through as to does the crime of simple assault allow for a 16-level enhancement under 2L142? Your Honor, it does not. And I think what's striking about this case is it's not necessarily the attorney who was bringing it to his client's attention. It was his client who brought it to his attorney's attention in the letter he wrote disputing the pre-sentencing report's findings, noting that the— You sort of wish he had written the letter. That's true, but that doesn't explain why counsel performed the way he performed. The objection was brought to his attention and he failed to object. There's no rational reason for why he wouldn't object. I'm sorry. Let's back up for one minute to what the district court did here, because that's what we're reviewing. The district court construed the issue as being one having to do with aggravated felony. That's true. So, I mean, even if at that level— At most. At that level, we have concern as to whether the right thing is done at the district court level. Is that correct? I agree with that. And I believe in the district court's defense that probably happened because Mr. Otero, in his pro se petition, seems to have mistaken which felony he was— Well, he says it wasn't that aggravated. It wasn't an aggravated felony. It wasn't that aggravated, is one thing he says. But he also says that it shouldn't be given the 16-level aggravated felony enhancement, which doesn't make sense because there is no 16-level aggravated felony enhancement. And that's not really relevant to the issue of should counsel not have objected to this enhancement because the simple assault conviction in Pennsylvania is not a crime of violence. I agree with that. That's true. And it is not a crime of violence under Pennsylvania law. Also under Pablo. And under Pablo, which this court later decided. There was ample support from both outside the circuit and within the federal sentencing guidelines themselves that the Pennsylvania simple assaults should not be given the 16-level crime of violence enhancement that it was in this case. Well, even absent case law—and this is something that I will ask Mr. Smith—even absent case law, when you look at crime of violence, it says has to have as an element the use of force. Or no, is it use of force? The use of force. And then you look at the elements of simple assault, and it's not there. You almost don't need Tran or these other cases having to do with intentional to find that it just doesn't match up. I agree wholeheartedly. And it's even more striking considering the federal sentencing guidelines that use the word simple assault to describe a crime that should not be considered a crime of violence. The amendments in 2001 specifically note that this crime shouldn't be given the enhancement it was in this case. Well, but we can't really—I mean, I'm thinking that the drill has to be looking at the elements of the offense in the state. I agree. And under Taylor, that's the correct approach. Under the categorical approach, that is precisely what the court should do and what counsel should have done. I think counsel can argue that your client stole defeat from the jaws of victory by sending his letter to the probation office. I'm afraid that objection was not raised by counsel to the court. It was noted by the petitioner in this case, but it wasn't raised to the district court directly by counsel as a formal objection. And the district court essentially ignored it as just a communication between the attorney and Mr. Otero. I don't necessarily believe that the court is obligated to— In effect, wasn't—I mean, the argument would be that he was conceding that there was intent on the assault on his wife. I'm afraid I don't see that from the letter. He said they had a disagreement, they had a fight or a dispute, and that his wife was injured. But that recitation of facts doesn't necessarily indicate that he ever intended to hit her. He says he moved in a way that ended up getting hurt. But let me back up here. Aren't we confined, by virtue of the fact that crime of violence requires as an element of the offense, aren't we confined to the statutory definition and the statutory elements of the offense? That is entirely true. The court can— That's applicable if we have to find out whether he admitted to something or whether there's a generic burglary or where we have to go beyond it because he could have been convicted of something else. But when something says an element is X, don't we just look at the statute? Absolutely. I don't believe this court has to do that. And that's what the Vargas-Durán case or whatever you cited in your brief. The Vargas-Durán case is directly on point as well as this court's decision in the Renoir case which says you just look at the underlying elements of the underlying offense. And I couldn't find a case that said anything different. When you're looking at crime of violence where it's an element of which has to be X. I'm aware of no case like that, Your Honor. Mr. Smith, I see you thinking and I will ask you when your opportunity comes. And just to switch, the point is that an element is intent. Intent wasn't pled here because it could have been recklessly. Poppel then comes in and says if that's the case, then you haven't shown categorically that you have intent. My point, and I think maybe Mr. Smith's point, would be that he admitted that there was intent by the letter to the probation office. Now, you supposedly don't go beyond the categorical approach except in rare circumstances. Is this one of those rare circumstances? I don't believe the letter actually describes an intent to cause bodily injury to his wife. It never uses any sort of language that connotes that he actually intended to punch her, as the government says. And more to the point, his counsel never raises that objection which suggests that his counsel was deficient for failing to object which is the issue underlying this appeal. Regardless of anything else, is the simple assault of which he was convicted a crime of violence? As it's been charged here, no. Because it includes all three of the alcohol and marijuana. Is it an aggravated felony? I do not believe it is, Mr. Poppel. This court has held that it doesn't rise to the 8th level offense. It clearly shouldn't rise to the 16th level offense issue in this case. Before you're done, I'm going to come back to the other crime to which he was assessed by a lawful taking. Isn't that an aggravated felony? It certainly wasn't part of the sentence in this case. It wasn't part of the enhancement issue in this case. And therefore, I don't believe it should be within this court's concern when discussing whether or not Mr. Otero's counsel was constitutionally ineffective. And I would also point out to the court that the second charge during the Pennsylvania simple assault charge that included an intent element, that charge was dropped as part of the plea bargain. There's no charge of intent in this case, and Mr. Otero never pled to a charge of intent that included intent. Therefore, he was never convicted of a crime of violence under the federal sentencing guidelines. If there are no further questions, I'm sorry. The issue with respect to the use, the reliance upon the PSR notation for proof of the conviction. Yes, Your Honor. Is that a constitutional issue that's cognizable in habeas? Your Honor, I believe it is. But I, first of all, I don't think the court needs to reach it based on the ineffective assistance of counsel issue. But if it does reach that, the Shepard decision was decided based on constitutional principles, and in an attempt to avoid a constitutional violation, that same interpretation must be given here in order to avoid a constitutional violation. What was the constitutional violation? The constitutional violation there would be the defendant's sixth amendment right to adjourn. What was the constitutional violation here? It would be the same violation, it would be the same issue, fear of violating the defendant's constitutional right to adjourn. But isn't what happened in Shepard that the court went outside what the court could look at for purposes of sentencing and ended up sentencing the person beyond the statutory maximum? The statutory maximum I thought was 10 years, he got 15 years. That was the constitutional violation. Here, what's the statutory maximum? The statutory maximum is 20 years. So you've got five years, right? Yes, Your Honor, but this sentence occurred prior to Booker, therefore the relevant statutory maximum would be the statutory maximum as the sentencing guidelines. Well, prior to Booker, but also after Apprendi. So where's the constitutional violation here if you did not go beyond the statutory maximum? The statutory maximum, the relevant statutory maximum for this case is the statutory maximum under the federal sentencing guidelines as they can be applied. And you cannot apply them without the infringement of the constitutional right to a jury trial. But what is the statutory maximum? Forget the guidelines, what's the statutory maximum? It would be 20 years here, right? The statutory maximum is 20 years, yes. But he got five. Yes, that's correct. So if the Supreme Court says that you look at something beyond the boundaries we allow you to look, and because you did that, that you did that, caused you to go beyond the statutory maximum, there is a constitutional violation. If here, you looked at something beyond the boundaries you should have looked at, but you did not go beyond the statutory maximum, it does not appear that there was a constitutional violation and that we, as a court, not Jeffrey Mandel and I, I don't think we're on that panel, but that looked at this and said that there's a certificate of appealability that should be here. Maybe it was improvidently issued. Well, first of all, the certificate of appealability has two distinct issues, including the effective assistance of counsel, which would be the constitutional issue. I believe the certificate of appealability is entirely appropriate. The certificate of appealability on the effective assistance of counsel is clear. I'm talking about Sheppard. Sure, I'm sure. And I believe that this court asked us to brief this issue, which we have, and I don't believe there is any applicable precedent that prohibits this argument. And I would assert that the Booker case indicates that the relevant statutory, the relevant maximum is the maximum under the federal sentencing guidelines. Okay. Thank you, counsel. I have one question. I didn't follow the answer to Jeffrey Mandel's question with respect to the PSR. You argued that using the PSR to establish this simple self-conviction or the fact of it, I think there may be a victim statement in there. It is in violation of Sheppard. And I would think that you failed to raise that issue. And in your reply, did you say, although he defaulted on it, how appropriate is that with your argument with respect to the error of using what laws contained in that PSR to, shall we say, overwhelm the fact of a conviction for simple assault in the categorical approach? I believe, first of all, counsel was prohibited from objecting to the overall reliance on the pre-sentencing report based on this court's decision in Watkins. Therefore, counsel was not allowed to object to the pre-sentencing report, and therefore I don't believe the objection based on Sheppard would have been available to counsel at the time. Nevertheless, the objection to the enhancement would have been available, and therefore the ineffective assistance of counsel argument is still preserved, if that answers your question. Thank you. Thank you. If I may have just a moment, Your Honor, to get Mike. Take your time. By the way, Mr. Smith, do you remember your first oral argument for the Fourth Appeals? I remember mine first. I believe I actually did. I would usually say speak into the microphone, but you really don't need to speak into the microphone to answer this question. This is just a killing time. Mr. Waterman, is this your first argument? I'm just asking if you remember your first argument. I remember mine. I do remember mine. I don't have as much pride in my first as my opponent, I think, should have in his. Well said. May it please the Court, my name is Ted Smith. I'm an assistant United States attorney for the Middle District of Pennsylvania in Harrisburg, representing the United States, the appellee. At the outset, should not counsel have objected to the 16-level enhancement? I honestly don't believe counsel should have, because counsel knew that the charging document charged a simple assault that consisted of striking the defendant's wife with a closed fist, which I think is a simple assault involving at the very least an attempt to inflict bodily injury. But counsel could not have read the definition of crime of violence, and alongside that, the definition of simple assault under Pennsylvania law, and found that simple assault was a crime of violence, because to be a crime of violence, it had to have as an element the use, attempted use, or threatened use of physical force. And that is not anywhere an element of simple assault under the law. I disagree, and I'm going to have to say why. Tell me why, because I'm looking at the statute. I heard your Honor say that, and I scrunched my face up. I remember Judge Ambrose on one occasion asking me at an oral argument after I scrunched my face up if I played poker. And I shouldn't have scrunched my face up, but I disagreed with the premise, because if you look at Shepard, and Shepard expands on Taylor, and look at the holding of Shepard on page 26 of the Supreme Court's decision, we hold that inquiry under the ACCA, Armed Career Criminal Act, to determine whether a plea of guilty to burglary defined by a non-generic statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement, or transcript of colloquy between the judge and defendant in which the factual basis for the plea was confirmed by the defendant or to some comparable judicial record of this information. That is not under the definition of crime of violence, where it has as an element. Shepard had to determine whether the jury necessarily found the entry of a building in order to convict, and it was an issue of what had to be found in order to convict of that crime. Here, we were at a loss to figure out exactly what the jury had determined or could have determined. Here, the issue under crime of violence is whether the statute has as an element the use of force. I think it differed on the interpretation of Shepard. Taylor dealt with a jury verdict, and then Shepard told us what you can look at when it's a guilty plea, and Shepard said that one of the things you can look at is the charging document. Mr. Smith, let's look at the charging document. Count one. Simple as that. The actor did attempt to cause, or intentionally, knowingly, or recklessly. We don't know whether he recklessly, accidentally struck her or whether he intentionally struck her. So even if you are correct about the use of the charging document under Taylor, for example, while in Shepard, we still don't know if it was reckless or intentional. I agree that that certainly presents a tougher question. I don't think that that forecloses a determination that he or the defendant pleaded to an intentional act because the information goes on to say, by striking her about the face with his fist, and I think that necessarily involves an intentional act with respect to the causation of violence. But also it could be a reckless act in which, you know, they're flailing, I mean, look, theoretically you can think of that, and the way the Supreme Court has resolved it is to say, in almost all cases, you'll look to what the category is and what the category says. And the problem that you have here is that on this case, in which you have some very good arguments on your side, Judge Becker came down the other way in Poppel. Well, first of all, I think we're looking at a different statute than Judge Becker was looking at in Poppel, and that's why I think the A-level enhancement sticks, because the defendant pled guilty to being an aggravated felon. The A-level enhancement might stick if this were a theft, but does it really stick if it is a simple assault under the Pennsylvania statute? I think it does, and he admitted, and he hasn't denied, he has nowhere claimed that his plea of guilty to being an aggravated felon, who has re-entered the United States, was not knowing, voluntary, and intelligent. And I think if he did, he'd be in derogation of his plea agreement. No, he came back in the United States right away, but you're tacking on another crime to that to get an A-level or 16-level enhancement. No, that was the crime he was charged with. Aggravated felon was actually what he was charged with and what he pled guilty to. Correct. But the enhancement was for crime of violence. The enhancement was for crime of violence, and there clearly is a difference between the two. I don't think counsel and I disagree. The A-level enhancement here occurred because it was a crime of violence, but it was a different definition of crime of violence. It was the Crimes Code definition of crime of violence, which counsel says is broader than the guidelines definition of crime of violence, and I agree with him. It is a broader definition because it involves creating a substantial risk of the use of force against the personal property of another. Tell me what case in which they were determining whether, for purposes of crime of violence, something had as an element the use, attempted use, or threatened use of physical force. Tell me what case goes beyond the categorical approach in deciding that issue. I will, but I think you and I are talking, respectfully talking apples and oranges when we talk about categorical approach. In the case I would first point to is Shepard, which wasn't crime of violence. That's talking about generic burglaries. But it was to the charging documents. When I say categorical approach, I mean we look at the statute because that's where we find the element. It says were any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force. Now, the Pennsylvania civil assault statute, I can give you a poison pill and you die. And I will be convicted of simple assault. I'm not so sure of that. Attempts to cause intentionally known arrest cause bodily injury. You die, and I did it intentionally. That is not a crime of violence. But I think what we have to look at is what the crime of violence was that he was charged with. And he was charged with striking his wife. He was charged with simple assault as defined under Pennsylvania state law. And that's what crime of violence says. Any offense under federal, state, local law that has as an element. And I'm saying tell me what case has said when you're looking at that provision that you go beyond the statute. Well, Ramoy says that. Ramoy says that. Ramoy passed beyond that. Ramoy said it went to the next. It wasn't decided on that part. It was decided on the, is that the sexual? Yes, but it was crime of violence. Right, but. And it looked at the crime charged. Not just at what the statute would permit for conviction, but what crime was actually charged against Mr. Ramoy. Let me read. In effect, the guidelines set forth two paths to finding a state offense such as Ramoy's to be a crime of violence. Under the former, we must assess whether the state crime has the use or threat of physical force as an element of the offense. That path is not applicable here because as the government concedes, the literal language of NJSA 2C, et cetera, does not require the physical force as an element. Indeed, it is the absence of physical force as an element that distinguishes C2 from C1. So it goes on to C2, crime of violence must be by way of the second path, which is the forcible sex offense. And it goes into whether the forcible, it rendered the, you know, physically helpless. So it reinforces, it reinforces the fact that if you're talking about an element, you're talking about the statute. Not one read in conjunction with Shepard, because Shepard. Listen to my question and plugging it back in here. You are parsing out that first paragraph intentionally knowingly or recklessly, and then you go on to the first part. But isn't that specifically why Congress adopted the categorical criterion? And isn't that exactly what the Supreme Court said in Shepard that we are to avoid? That we have these trials within trials? We have these evidentiary inquiries to determine what may happen? Isn't that why we have the categorical approach? No, Your Honor. Categorically, that's not why we have the categorical approach. Because if it were, Shepard would not instruct courts to look at charging documents. It would not instruct courts to look at plea colloquies, which, by the way, we still haven't looked at in this case because the defendant has never produced it. But we could, and if this case is remanded, it would be our intention to obtain the plea colloquy, which would tell us what the defendant did. But the issue in Shepard was not whether there was a certain element of a crime. That was not the issue. It was what you can look to in sentencing and what are the proper things to look to, isn't it? It's what you can look at in determining what were the elements of the crime to which the defendant pleaded guilty. But it says you don't have to just look at the statute. But it wasn't under this provision of crime of violence, was it? It was under the provision of generic burglary. And if you look at James, the most recent decision by the Supreme Court on similar questions, the court, it's in a footnote, but points out that the issue there was whether a guilty plea to burglary, under a non-generic statute, necessarily admitted elements of the generic offense. The issue was not what are the elements of the generic offense. I think it is, but I think the question is whether the defendant admitted, what is the crime he admitted? Prosecutors charge, and particularly under Pennsylvania law, prosecutors charge. I must say, my wonderful law clerks, whom I just admitted to practice at the bar, we probably spent about three hours going back and forth. And I convinced them, but I don't have three hours. And I recognize that Your Honor and I are in disagreement about what the law is here. And I understand also that I'm likely to be on the losing end of a disagreement of that nature. I need someone else to agree here. I'm in a gray suit and Your Honor is in a black robe. I think we know. I'm only one vote. Well, nevertheless, I'm trying to convince the court that I simply disagree with that notion of what Shepard permits. If you go back to Taylor, what Taylor told courts to look at was what were the jury instructions. Because there you had to determine what the jury had to have found in order to have found the defendant guilty of that particular burglary charge. And to determine whether it's generic or not. In Shepard, what was the crime initially charged? In Shepard, it was a burglary, but the statute would have permitted conviction of burglaries not of the buildings or occupied structures. And the court said you couldn't look at police reports, which I understand. That's not what we're looking at here, but said you could look at charging documents and you could look at the plea colloquy. And I think the inquiry is not what will the statute permit a defendant to be convicted of on the basis of what facts will the statute permit conviction on proof of, but rather what facts did the defendant necessarily admit by pleading guilty. Now, I understand, Judge Nygaard, that you have an issue with me there. Because if you look at the charging document, it says did intentionally or did attempt to cause or intentionally knowingly or recklessly cause. So I understand I have a problem because that charging language says recklessly. But I think at the very least, if this case were to go back, we would then have to look at the plea colloquy to determine what the defendant admitted in the course of the plea colloquy in Adams County. Where did the sentencing here take place? Sentencing here took place July 18th. I'm sorry. That's the judgment in the 2255. It's before the line of cases. It took place before Poppel came out in 2005. Parsons was the only realtor. Before Shepherd, but after Taylor. And that's why I think, I see my red light was on here. I think the court under Taylor and counsel under Taylor would have had the same approach. That what did he plead guilty? Because I think one might have figured under Taylor that in the case of the guilty plea, we weren't going to be looking at jury instructions anymore. We're going to be looking at what did the defendant admit? If you were the counsel, but back to the opening question. If you were the counsel in this case, which came down after our decision in 92, which took off on Taylor, and somebody is attempting to do a 16 level enhancement. And by the way, this is pre Shepherd. So all your arguments about Shepherd, the guy didn't know about. Should he not have known that there was a red flag at the very least with respect to a 16 level enhancement for an illegal re-entry back into this country? Based on what he knew about the facts to which the defendant pled the charged facts. I don't, I don't think counsel was ineffective for not looking at that. I suspect that maybe I'd like to think that I would have asked to see the plea colloquy as opposed to just the charging document. But I think the charging document and the defendant's admissions in his letter to the probation officer, essentially all I did was hit my wife with a fist and cause some bruises. I think that defines an intentional inflection of bodily injury. Now, on aggravated felony, assume for the moment we're not dealing with crime of violence, which is the 16 level enhancement, but aggravated felony, which is 8. The definition of aggravated felony, where does it talk about intentional assault or assault and battery? Under aggravated felony, it incorporates the federal crimes code's definition of crime of violence, which is found in section 16 of title 18. It says, the term crime of violence means an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or B, any other offense that is a felony of that biased nature. 110143, where are you reading? I'm looking at what it incorporates, which is section 16 of title 18. Yeah, where does it say section, I'm just missing it. It says, I have 110143, the term aggravated felony means, and we go down to F, a crime of violence is defined in section 16 of title 18, but not including a purely political offense. I was looking at that as a crime of violence. So you go to title 16, crime of violence, which is, and I think counsel agrees with me on this, which is a broader definition of crime of violence. Now, I understand that Popal even suggests that that definition might not be met. Correct. But the defendant pleaded guilty to having reentered the country after conviction of an aggravated felony. And I think based on counsel's knowledge of what crime he had committed, the nature of this simple assault, I think it is an aggravated felony. Why didn't they just pick the F thing and go with the 8-level answer? Because I think they thought they had an aggravated felony under, I mean, they provided that in discovery materials to counsel. I think they felt that they had at least an 8-level. They charged him with aggravated felony, so they clearly believed they had an aggravated felony as defined in A43. And that's why they charged them. Excuse me. Where in Shepard or Taylor did the court talk about the portion of definition of crime of violence we have in front of us? It did not. It did not. But Shepard and Taylor are nevertheless the source of the entire so-called categorical approach. Every case that has said we employ a categorical approach is following upon Taylor originally, which was decided in 1993, I believe. 1990. 1990. Okay. Excuse me. But I think every case talking about categorical approach is enlarging on Taylor, and Shepard was enlarging on Taylor. And both Taylor and Shepard do encourage courts to look at charging documents and the plea colloquies. And in the case of a trial, we'll look at the jury instructions. When we must determine what they were convicted of. When the issue is what were they convicted of. Then you can look for something else. But would you not concede that we do not have an issue here of what was he convicted of. We have an issue of whether the element of the statutory offense requires the use of force. Never mind. I would not agree with that. You don't want me to answer. Okay. May I say why I don't agree with that, Your Honor, or must I? Sure. Definitely. I don't agree with that because whether the simple assault he was convicted of falls within the definition of aggravated felony is no different conceptually than the question whether a burglary under a non-generic burglary statute that, for instance, allows conviction if you're convicted of a felony. Whether that burglary was, in fact, a generic burglary. And Taylor says you can look at those things to make that determination. And James says very recently that you can look at the charging document to determine whether the burglary under a non-generic statute was, in fact, a conviction for a generic burglary. I see no conceptual difference between the two. Judge Nygaard, anything further? No. Thank you. Thank you, Mr. Judge. Thank you, Your Honors. Mr. Weinecker, the button. Just a couple of quick points, Your Honor. First of all, in answer to your question, Judge Amber, I believe that the sentencing was given in May of 2004. Even if this court were to follow the government's suggestion and look at the factual allegations contained in or factual description contained within the charging document, it doesn't even get to the level or doesn't allow this court to presume there was anything other than recklessness involved in this case. The State Prosecutor only charged recklessness. And that means that the State Prosecutor must have felt that that striking his wife in the face with the statute. We're not sure he only charged recklessness. He charged, followed the statute. Sure. And I thought what Mr. Smith's point was that if you have something that could include intent, then you can look at other documents in order to decide if the requisite intent was there. It would be better if it was in the indictment. It's not. It would be better if it was in the plea colloquy. But you can look in order to find out what really was the case. Because if you were a betting person, you'd probably go to Vegas and say this was with intent. You're just not assured of that. But the categorical approach only allows the court to look at the minimum elements necessary for conviction. And here the minimum element is still recklessness. And even if you look at the factual descriptions that have been given in this case, that includes the word striking. And unless this court is convinced that the word striking connotes intent, which I don't believe it does. I believe it means something along the lines of to cause to come into contact. I can strike my knee on this podium and it wouldn't mean that I was necessarily intending to do that. I don't believe there is any definitive proof of anything other than recklessness. And there's nothing in the charge to indicate that Mr. Otero pled anything beyond recklessness. And I don't believe that the Supreme Court's recent decision in the James case does anything to alter the Wren Law decision. And I think the second to last paragraph in the James case says that it's engaged in statutory interpretation, not in judicial fact-finding. Finally, I believe that the A-level enhancement doesn't apply in this case. First, because of the pop-up decision this court later decided. But even then, the Jobson case was available to counsel to raise the objection of the A-level enhancement. And finally, within the indictment itself, it doesn't specify which felony was the aggravated felony. So therefore, there's no specific felony to attach the A-level enhancement in this case. If they're not realized, if this goes back, then they bring up the theft and still get the A-levels. That may very well be the case, Your Honor. Thank you. Well, if it may very well be the case, then we have prejudice here as a result of the effectiveness. Sixteen. Oh, that's right, sixteen. So we have eight levels worth. Thank you. Case is well argued. And please, Mr. Wanamaker, tell your firm, Winston Strong, we appreciate their willingness to take this case. We find cases like this and have to go out and find counsel. And we very much appreciate their willingness and the excellence with which you briefed and argued the case. Thank you, Your Honor. We appreciate the opportunity. The same to you, Mr. Smith. Thank you, Your Honor. Thank you. All right. We will take our next case. Milkovich v. Attorney General. Thank you.